1-6-2-2-6-8, Thomas G. Gallagher, Inc. v. Edward Hugler 1-6-2-2-6-8, Thomas G. Gallagher, Inc. v. Edward Hugler Mr. Lebeau, good morning. My name is Jim Lebeau, and I represent the petitioner, Thomas G. Gallagher, Inc. and I wish to reserve one minute for rebuttal. You may. This case boils down to whether Gallagher exercised reasonable diligence with respect to the violative conditions at issue in this case. The ALJ's own order compels the conclusion that Gallagher did exercise reasonable diligence and therefore lacked constructive knowledge of the hazards identified in the cited standards. First, Citation I, Item 1. Keeping in mind that while an employer need not have a written work rule, it must have a rule that reflects the requirements of the cited standard. The cited standard in Citation I, Item 1 requires that loads must be properly balanced and secured in the sling or lifting device before it is lifted more than a few inches. This is all about proper rigging. And the ALJ found, The Secretary has not demonstrated that Gallagher failed to exercise reasonable diligence by not having a work rule that explicitly prescribed or proscribed the precise manners by which to rig the type of pipe assembly that was involved in the accident. The Secretary presented no evidence indicating that Gallagher failed to exercise reasonable diligence in not providing JT, the victim, with detailed formal training in rigging. Moreover, the ALJ found that, The compliance officer who conducted the inspection concluded that JT had received proper training on how to rig the pipe assembly that injured him. The Secretary presented no direct evidence that would controvert the compliance officer's stated conclusions on JT's training. And lastly, the ALJ found that, The Secretary has not established that Gallagher failed to exercise reasonable diligence in not discovering the violative condition in the course of its normal inspection and examination of the worksite. Bottom line, the victim knew how to properly rig the assembly that injured him. And Gallagher didn't fail in its duties to provide a work rule that explicitly proscribed or prescribed the manner in which to rig the subject assemblies. And Gallagher had a sufficient inspection program to determine whether or not its employees were rigging properly. I think we need to argue not that the ALJ was right, but rather that there was no substantial evidence to support the contrary conclusion, don't you? Well, Your Honor, what was odd about this case is that we rung the bell on every element that comprises reasonable diligence. And at the end of the order, the ALJ shifted the focus to a general hazard, a hazard that wasn't litigated, which is, the foreman said, when we rig and load these large pipe assemblies, we like to do it as a team. And it was based on that testimony that the judge concluded that the foreman certainly anticipated the hazard posed by even an experienced pipe fitter undertaking alone and supervised the dangerous job of rigging the big and heavy pipe assemblies for the Novartis project. It was based on that, that the finding of a lack of, a finding of constructive knowledge that this particular employee was going to misrig the subject pipe assembly the wrong way, which is a totally different hazard. This is a hazard that the foreman says, hey, I have a preference when we're rigging and loading to have more people. And that only gets us to a hazard of rigging alone. So perhaps it's constructive knowledge that Gallagher would know that JT would rig alone, but that doesn't get us to the primary issue, which is, will JT rig improperly? Well, I thought you, I think, didn't quite fairly quote the record. He says the ALJ understood it, which wasn't that I like to do this with my team. It's that I understand this to be a dangerous activity, and I require the team to do it with me. Your Honor, in response, here's the section that both the secretary and the judge relied upon. Question. In the years leading up to the accident, did employees typically rig and load, compound question, did the employees typically rig and load pipe assemblies without your direction? Answer no. Question. Now, why do you oversee the rigging and loading of pipe assemblies? Answer. Because it's, they're big and heavy, and I feel it's, you know, a dangerous job to do, and that's why I picked the right guys, and we do it. The hazard under the cited standard is securing and balancing the load, which the ALJ concluded that he knew how to do that. Just so I understand, Judge, are you saying that if that had not been a compound question and only was rigging, then it might have been enough to satisfy, not saying he would say, but it might have been, but because it was rigging and loading, it's ambiguous as to what he was saying was, I don't know if he knows how to rig it. It might be he just doesn't know how to load it. Is that the point? That's really, that's not the point. That's the point of, he's misconstrued it, but that only gets you to constructive knowledge that J.T. would rig alone. You have to also get to the point where J.T. is going to rig alone. He's rigging it properly. I think he's reading the form in there to be impliedly representing that the reason I require people to do it with me is because it's so dangerous. I want to be there, which he then infers is a basis for concluding people, when they do it alone, do it improperly too often. What would be wrong with that chain of reasoning? Because that inference runs right into the exact findings of the ALJ. The Secretary has not demonstrated that Gallagher failed to exercise reasonable diligence by not having a work rule that explicitly prescribed or proscribed the precise manners by which to rig the type of pipasys. There's no need for one if the work rule is you have to do it with the foreman and the foreman makes sure that they do it the right way. In other words, if the work rule is that the foreman always requires you to do it with him, it's probably right. There may be no legal requirement to have a work rule telling each individual how to do it because the practice is you do it with the foreman. That's why the ALJ says if that's how you're going to proceed, you better at least tell people not to rig without the foreman there. If that wasn't done, therefore we say constructive knowledge. What's wrong with that reasoning? Two things are wrong. First, the judge in paragraph 16 concluded that JT could have rigged it by himself. And I'll take you right to it. He states, JT could have rigged the pipe assembly in a manner that would have avoided or mitigated the problems created by the manner in which he actually rigged it. One such manner would have been to use four synthetic web slings with one sling connected by a choker hitch to each of the four corners of the pipe assembly. The foreman could have trained everyone individually on how to do it exactly right if he assumed only one person could do it on their own. But instead, he's got this practice, it sounds like, where no, I'm always there rather than training people individually, and then this time he's not there. Sure. And the judge specifically found that we did not fail in exercising reasonable diligence in not discovering the violative condition in the course of our normal inspection and examination of the work site because we're almost there almost 100% of the time, but we're not. I mean, it was in this small window of time. But all of that's consistent with the idea that, sure, you were diligent in monitoring the workplace and all that, and it's acceptable for you not to train each person. It's acceptable for you not to have a work rule identifying for each person what they need to do. As long as your practice is that I don't have to have any of those precautions because I always make sure they do it when I'm present. And if that's how you're conducting your workplace, you better tell people not to rig when the foreman's not present, and that wasn't done. That's the negligence that they then attribute to say that there's constructive knowledge. What's wrong with that reasoning? Because it never gets to the point, there's been no evidence, and we never, first of all, that is a hazard that was unilaterally recognized by the foreman. That is a recognized hazard. That's not the hazard at issue in the standard. It's a hazard that's recognized by the foreman, and we never tried it. That's a general duty clause case. We never tried that case. I don't think I followed that. Sorry. The hazard is rigging? The specific hazard that we were cited for was secured and balancing the load when you're rigging it. And the findings all show that he knew how to do it. The fact that we didn't catch him doing it wrong is not on us, and that there were no other work rules for us to have provided to J.T. to rig it properly because he knew how to do it. And, in fact, he could have done it on his own on Paragraph 16 of the judge's order. You're saying this is a bait and switch. You would charge the one thing, exonerate him on it, but then at the end, surprise, he'll do something else. He played on a playing field dictated by the standards, and then that playing field got shifted. And you're saying that something else that you got surprised with was just a finding of a general violations, a general conditions violation? It would have been a different trial if we knew up front that this was going to be a general duty case. It wasn't. It was a specific standard case. I guess I'm just not understanding. They cited you under the standard. Under a specific standard. That's correct. And the reason is because they charged you with having constructive knowledge. That this particular employee would not rig a security imbalance. And the reason they got to that conclusion was the conclusion that, by the evidence deduced in the hearing, it came out that the foreman knew his workers might not be able to do it unless the foreman was present. Now, you're basically saying that they don't have substantial evidence to support that conclusion, which I understand that argument. But I don't understand why there's a bait and switch. He never said they might not be able to do it. He said, my preference is when you're rigging and loading large pipe assemblies. Well, that's your reason too. That's a substantial evidence point. It's not a bait and switch point. Well, it goes to a different issue, which is not that he can't rig it on his own. The ALJ has already determined that he could rig it on his own and rig it properly. It's this, I have this preference. We never really got to that. Thank you. Good morning, Mr. Gladman.  May it please the court, the commission's final order should be affirmed for two reasons. First, because Gallagher had constructive knowledge that the pipe assembly was improperly rigged. And second, because Gallagher had constructive knowledge that Mr. Tivo put his hand directly on the improperly rigged pipe assembly. Explain to me this constructive knowledge that the pipe was improperly rigged. Certainly. Gallagher, the basis for that finding was that Gallagher failed to communicate adequately its work rule that big and heavy pipe assemblies were to be rigged only at the foreman's direction and only under his supervision. There is no evidence that this rule was ever communicated. There was a rule to that effect? Yes.  big and heavy pipe assemblies to be rigged only under his supervision and only at his direction. There is no evidence that this rule was ever communicated orally or in writing to employees. Is there evidence that in fact was a rule? I mean, we're supposed to look at the entirety of the record. And there is also testimony from the foreman, I think, saying J.T. always does it right. Isn't there testimony to that? There is testimony to that effect. So if I put that together with his statement that he had this practice of bringing everybody together, how am I to deduce that we know to some high level of confidence or sufficiently high level of confidence that in the workplace the foreman believed that absent having him do it under his supervision, J.T. would do it wrong when he's on record saying J.T. always does things right? Well, there are a couple of answers to that, Your Honor. First of all, the ALJ found that the foreman wasn't correct in saying that J.T. always does it right. That wouldn't be relevant to determining whether there was a workplace rule that the foreman had implemented. If J.T. always does it right, that would cast doubt on whether the foreman's statement, that I always bring people together, was a statement about a practice that he follows as opposed to a rule that he thought was necessary. You need it to be a rule that he thought was necessary. And he did say it was the foreman did say it was necessary because of the danger of bringing these big and heavy pipe assemblies, which even experienced pipe fitters were required to have supervision to handle. The foreman testified to that effect. He said that basically there's no problem rigging the smaller, lighter loads. The pipe fitters can do that by themselves, but when it comes to anything big and heavy, I need to get involved. I'm always involved with it, and that's on appendix page 252. It's almost a direct quotation of what he said. So basically what the foreman was saying is, all right, these guys have had training. They've had adequate training up to a point. They've had adequate training with rigging the smaller and lighter loads, but not with the bigger and heavier ones. Those are dangerous. They're too dangerous for those guys to rig by themselves. Now, also, the pipe fitter, Jason Tebow, rigged the assembly improperly three times on his own initiative and without such supervision from the foreman. And finally, his coworker, Joe Miles, who helped Mr. Tebow hoist the improperly rigged pipe assembly, did not caution him that he was breaking the rule, which is a further indication. Yeah, it's also a further indication that maybe the ALJ was over-reading the testimony of the foreman to suggest that there was a work rule, that you had to do it with him present, since there seems to be lots of evidence in the record of people not doing it with him present and not being told. The one thing, if you had a clear work rule in the employee handbook or something, we're taking just this one statement from the foreman. Then the ALJ says, that must have been an actual work rule, which he was required to communicate. But there's a lot of indication in the record that maybe there wasn't such a work rule. And then there's also this indication that he trusts JT to do things right. Now, he may be mistaken in that, but I guess I'm just wondering. Well, first of all, Your Honor, this was an inference from the testimony, but I think it was a reasonable inference. And furthermore, the reasonable diligence standards required Gallagher to have a rule that was designed to prevent the violation. And if it did not have such a rule, then it did not exercise reasonable diligence. So either way, Gallagher loses. Couldn't the rule have been just, I trust the training? The ALJ held that there was no requirement to have something else, was there? But there was a requirement to have a rule that was designed to prevent the violation. And furthermore, it couldn't just be any old rule. It had to be a rule that would be effective. In other words, a rule that, if followed, would be likely to prevent the violation. And the reason why the mere training rule was not sufficient is, as I mentioned, because the foreman himself testified that that wasn't adequate for the big and heavy loads, because they were too dangerous. Could you just run a thread through from the citation that started this proceeding to the evidence, to the then finding that they were held liable on? Because there's been a suggestion by Petitioner's Counsel that they got charged with one thing, vindicated on it, but then held liable for something else. No, I don't think that's true at all. I think that, as I said, the reasonable diligence standards require an employer to have a rule that's designed to prevent the violation. The foreman's rule was clearly such a rule. It was designed to prevent the violation. And furthermore, the ALJ found that had that rule been followed, had it been effectively communicated, it was likely to have been followed and it was likely to have prevented the violated condition here. Am I right that the test that's being used and the precedents that set forth that test from the board that are being used are taken from interpretations of the general duty rather than from any particular regulatory rule regarding the reading of pipes? No, no, you're not, Your Honor. The OSH Act is a preventive statute. That is to say it is designed to require employers to anticipate hazards and prevent violations. And that requirement of anticipation of hazards and prevention of violations is found under both general duty clause cases and specific standard violation cases. There's no difference between the two. I understand. I'm just saying literally the precedents, the particular precedents cited, happen to be precedents interpreting the general duty. Well, that's not completely true. Some of them are, but there are also precedents that cite specific standards. No, not this one. Your point is legally that's irrelevant. That's right. Okay. Right. Is there any general rule that requires a supervisor to be present when this type of activity is taking place? Is there any general rule you mean in OSHA standards? Yes. No, no. So if someone is qualified to carry these operations, you don't really need a supervisor. Well, it depends on what the operations are. Well, the operation in this case. Yes, but as I was saying, the foreman testified that no supervision was needed for the smaller and lighter loads, but supervision was required for the heavier, bigger loads. You mean if someone was trained and was qualified to carry them out? Yes. Why? Because of the greater danger of having the heavy weight. I think your only answer is because the foreman said so. If the foreman said the opposite, the foreman testified and said, I trust my guys. I particularly trust JT. He's the best pipe fitter there is. Then on the ALJ's findings, the company did nothing wrong, even if it turns out JT rigged it wrong. Right, but there was also the objective danger of actually dealing with these loads. But there's not a word in the ALJ's opinion suggesting that that objective danger mandates any rule in the workplace. All he says is that, in fact, there was a rule in the workplace because the foreman said so. Since the foreman had that rule, he had to notify people of it. Yes, that's true, Your Honor. Well, so then what is the answer to Judge DeWay's question, which is, why does that make sense particularly? Because, I mean, they choose to have a rule of some kind that's not required by OSHA for them to have, and then they don't follow it, but so who cares? That's not quite right, Your Honor. OSHA does require the employer to have an effective work rule, one that is designed to prevent the violation. Now, the employer has some discretion in choosing what that rule is, but it can't not have that rule. So is the right way to read the ALJ opinion here that the ALJ was effectively saying they opted for this way of doing things? Given the danger, that was a reasonable way to do things. But if that's how you're going to do it, you've got to communicate that work rule. That's correct, Your Honor. So if the foreman had said, I don't have any rule that I have to be there generally, period, then they wouldn't have violated that nonexistent rule, but the ALJ might have found violation by having no rule to deal with a dangerous situation. That's right, Your Honor. For these reasons, the Commission's final order should be affirmed. Thank you. Just for a second, Your Honor. And on the topic of just because the foreman said so, the appendix that opposing counsel cited to and the judge ALJ cited to, again, reads, Question. In the years leading up to the accident, did employees typically rig and load pipe assemblies without your direction? Answer. No. Question. Now, why do you oversee the rigging and loading of pipe assemblies? Answer. Because they're big and heavy, and I feel it's, you know, a dangerous job to do, and that's why I pick the right guys and we do it. That's the full statement, just so the record's clear. And for the reasons already stated, we ask that this Court vacate the citations at issue. Thank you. Thank you.